FILED
DECEMBER 13, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 7009**

| | |
|---|---|
| MICHAEL FORTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| CITYVISTA CAPITAL, LLC, ) | JURY DEMANDED |
| a Delaware limited liability company; ) | |
| and HENRY CISNEROS, individually; ) | |
| and AMERICAN CITYVISTA ) | |
| HOLDINGS, LTD., ) | |
| Defendants. ) | |

**JUDGE KENDALL
MAGISTRATE JUDGE KEYS**

## COMPLAINT

NOW COMES plaintiff MICHAEL FORTIN, by his undersigned attorneys, and for his Complaint against defendants CITYVISTA CAPITAL, LLC, HENRY CISNEROS, and AMERICAN CITYVISTA HOLDINGS, LTD. f/k/a AMERICAN CITYVISTA, LTD., alleges and states as follows:

### PARTIES

1. Plaintiff Michael Fortin ("Fortin") is a citizen of the State of Illinois and resides in this district.

2. Defendant CityVista Capital, LLC ("CityVista") is a Delaware limited liability company which is doing business in and has an office located in this district.

3. Defendant American CityVista Holdings, Ltd., formerly known as American CityVista, Ltd. ("ACV"), is a Texas limited partnership which at all relevant times was doing business in and had an office located in this district.

4. Defendant Henry Cisneros ("Cisneros") is a citizen of San Antonio, Texas. At all relevant times, Cisneros was a majority owner and officer of ACV and is currently a majority owner and Chairman of CityVista.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) (diversity) since the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the case is between citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because (a) defendant CityVista resides in this district, and (b) a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

7. In March 2003, Fortin began his employment with ACV, CityVista's predecessor, as Regional Manager of its Texas Division.

8. Fortin's primary job duties were to "tie-up" tracts of vacant land by putting them under contract for residential development.

9. Fortin was entitled to receive compensation consisting of a base salary plus Incentive Compensation of $110 to $150 per lot for all tracts of land he put under contract for the company. The per lot payments ranged from $110 to $150 per lot depending upon the percentage of the bonus plan achieved by Fortin. The Incentive Plan is attached hereto as Exhibit A and incorporated by this reference.

10. In December 2003, ACV required Fortin to sign an Independent Contractor Agreement, however his job title and duties and the terms of compensation, including the Incentive Compensation, remained the same.

11. Paragraph 8 of Fortin's agreement with ACV states as follows:

> Incentive: The incentive plan will be similar to the prior American CityVista incentive plan for all tracts of land the consultant puts under contract for American CityVista, paying 50-74% of Plan bonus at $110 per lot. At 75% of Plan, bonus increases to $125 and pays $150 per lot for all lots between 50-75%. The Houston Plan is 525 lots. Additional incentive is provided after 100%, but there is not retroactive pay. The incentive pay will be paid to the consultant upon closing.

12. Fortin fully satisfied all conditions precedent to be paid Incentive Compensation under this agreement by obtaining contracts for vacant lots for ACV for the projects described in paragraphs 13-16 below, which sales subsequently closed. Therefore, Fortin is entitled to be paid Incentive Compensation for said transactions.

13. On approximately September 6, 2003, Fortin put under contract 212 lots for ACV on the Sierra Vista project. The lot sales closed on August 22, 2004. Fortin was paid Incentive Compensation for this transaction of $23,320, based on $110 per lot. (Fortin is not making a claim related to this transaction.)

14. On September 29, 2003, Fortin put under contract 130 lots for ACV on the Deer Creek-Pasadena project. This was a marketing deal in which ACV agreed to pay Fortin Incentive Compensation of 6% of the revenue received by the company. ACV received revenue of $35,000 on this project, and therefore Fortin is entitled to Incentive Compensation of $2,100, 6% of $35,000. Fortin has not been paid this Incentive Compensation.

15. On October 31, 2003, Fortin put under contract 1,882 lots for ACV on the Tuscany Lakes project. The lot sales closed in June, 2007, and therefore Fortin is owed Incentive Compensation of $282,300, *i.e.*, 1,882 lots x $150/lot. (Fortin is entitled to $150/lot because 100% of his Bonus Plan was achieved). Fortin has not been paid this Incentive Compensation.

16. On July 27, 2004, Fortin put under contract 79 lots for ACV on the Uvalde project. The lot sales closed on January 31, 2005, and therefore Fortin is owed Incentive Compensation of $11,850, *i.e.*, 79 lots x $150/lot, which remains unpaid.

17. On August 15, 2004, ACV unilaterally changed its Incentive Compensation policy for Fortin as follows:

> Regional Managers [Fortin's position] should expect to earn up to 6% of all revenues that he or she generates for the firm. Revenues generated via marketing arrangements are entirely exempt from this type of additional compensation.

18. In March 2005, Fortin was transferred to Chicago and began selling financing on behalf of the California Public Employees Retirement System (CalPERS), as a representative of CityVista. CityVista was and is a fiduciary for CalPERS. Fortin was made an employee of CityVista and began receiving his salary from CityVista. Fortin was assured by CityVista that his Incentive Compensation, *i.e.*, 6% of all revenue that he generated for the company, would continue as before.

19. On June 9, 2006, Fortin procured a mezzanine financing transaction for CityVista for a project known as Woodland Park, which closed on October 13, 2006. Fortin is entitled to Incentive Compensation for this transaction of 6% of the revenue received or scheduled to be received by CityVista, which Fortin is informed and believes to be in excess of $1,110,000. Fortin has received no Incentive Compensation for this transaction.

20. On November 7, 2006, Fortin procured a leveraged equity financing transaction for CityVista for a project known as Auburn Lakes, which closed in July of 2007. Fortin is entitled to Incentive Compensation of 6% of all revenue received or scheduled to be received by CityVista, which Fortin is informed and believes to be in excess of $3,366,000. Fortin has received no Incentive Compensation on this transaction.

21. Fortin has demanded that CityVista pay Incentive Compensation for the projects identified in paragraphs 14 through 20 above, but CityVista has failed and refused to pay any Incentive Compensation whatsoever for these transactions.

22. In December 2006, Fortin received a positive performance review and was promoted to vice president and given a 10% salary increase.

23. On April 23, 2007, Fortin sent CityVista a writing stating that he had been constructively terminated, he believes in part because of the failure to pay Incentive Compensation owed to him. On May 3, 2007, CityVista terminated Fortin's employment.

## COUNT I
## FOR VIOLATION OF THE WAGE PAYMENT AND COLLECTION ACT

24. Fortin realleges and incorporates by this reference the allegations of paragraph 1 through 23 as though fully restated herein.

25. Fortin was an employee of CityVista under the terms of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, 2 (the "Act").

26. Pursuant to his agreement with CityVista, Fortin was entitled to receive Incentive Compensation for transactions that he generated based on a percentage of revenue received by CityVista.

27. For the period in which Fortin was working in Illinois, following his transfer to Chicago in March 2005, Fortin satisfied all conditions to be entitled to receive Incentive Compensation for the Auburn Lakes and Woodland Park financing transactions, and therefore Fortin was entitled to receive Incentive Compensation of 6% of the revenue received or scheduled to be received by CityVista.

28. Fortin is informed and believes that CityVista has or is scheduled to receive revenue (including management fees of various types) totaling over $4,476,000 on the Auburn

Lakes and Woodland Park transactions, and therefore Fortin is entitled to receive Incentive Compensation of $268,560, 6% of the revenue.

29. By its failure to pay Fortin the Incentive Compensation described in paragraphs 19-20 and 27-28 above, CityVista wrongfully failed to pay Fortin all wages and final compensation earned by Fortin, in violation of Sections 4 and 5 of the Act, 820 ILCS 115/4-5.

30. Cisneros, as CityVista's Chairman, controlled its finances and knowingly permitted CityVista to violate the Act. Therefore, Cisneros shall be deemed the employer and is personally liable for the compensation owed to Fortin pursuant to Section 13 of the Act.

31. Pursuant to Section 1 of the Illinois Attorneys Fees in Wage Actions Act, 705 ILCS 225/1, Fortin made a written demand at least three days before this action was filed for the amounts that are due and owing, and therefore CityVista and Cisneros are liable for Fortin's reasonable attorneys' fees in addition to any amount determined by the Court to be due and owing as costs of the action. 705 ILCS 225/1.

32. Pursuant to the Illinois Interest Act, 815 ILCS 205/2, Fortin is entitled to pre-judgment interest at the rate of 5% per annum on the amount due.

WHEREFORE, plaintiff Michael Fortin respectfully requests that the Court enter judgment in his favor and against Defendants CityVista Capital, LLC and Henry Cisneros on Count I of the Complaint; award plaintiff compensatory damages in an amount to be proven at trial but believed to be at least $268,560, together with pre- and post- judgment interest thereon and plaintiff's reasonable attorneys' fees, costs and expenses; and grant such other relief to plaintiff as the Court deems just.

## COUNT II
## FOR BREACH OF CONTRACT (IN THE ALTERNATIVE TO COUNT I)

33. Fortin realleges and incorporates by this reference the allegations of paragraph 1 through 23 as though fully restated herein.

34. This claim for breach of contract is brought in the alternative to Count I in the event the Court determines that Fortin was truly an independent contractor rather than an employee of CityVista under the Illinois Wage Payment and Collection Act.

35. Pursuant to his agreement with CityVista, Fortin was entitled to receive Incentive Compensation for transactions that he generated based on a percentage of revenue received by CityVista.

36. For the period in which Fortin was working in Illinois, following his transfer to Chicago in March 2005, Fortin satisfied all conditions to be entitled to receive Incentive Compensation for the Auburn Lakes and Woodland Park financing transactions, and therefore Fortin was entitled to receive Incentive Compensation of 6% of the revenue received or scheduled to be received by CityVista.

37. Fortin is informed and believes that CityVista has or is scheduled to receive revenue (including management fees of various types) totaling over $4,476,000 on the Auburn Lakes and Woodland Park transactions, and therefore Fortin is entitled to receive Incentive Compensation of $268,560, 6% of the revenue.

38. CityVista has breached its agreement with Fortin by failing to pay him Incentive Compensation on these projects.

39. As the proximate result of CityVista's breaches of its agreement, Fortin has suffered monetary damages believed to be $268,560.

40. Fortin has sent a written demand to CityVista for payment of the Incentive Compensation owed on the Woodland Park and Auburn Lakes projects, but CityVista has failed and refused to make any payment whatsoever.

41. Fortin was a sales representative of CityVista (as his principal) under the terms of the Illinois Sales Representative Act, 820 ILCS 120/1, *et seq*.

42. CityVista's failure to pay Incentive Compensation owed to Fortin (which constitutes commissions under the Sales Representative Act) within 13 days of his termination is a violation of Section 2 of the Sales Representative Act. Therefore, pursuant to Section 3 of the Act, CityVista is liable to Fortin for exemplary damages in an amount not to exceed three times the amount of the commissions owed plus his reasonable attorneys' fees and costs.

43. Pursuant to the Illinois Interest Act, 815 ILCS 205/2, Fortin is entitled to pre-judgment interest at the rate of 5% per annum on the amount due.

WHEREFORE, in the alternative to Count I, plaintiff Michael Fortin respectfully requests that the Court enter judgment in his favor and against Defendant CityVista Capital, LLC on Count II of the Complaint; award plaintiff compensatory damages in an amount to be proven at trial but believed to be at least $268,560, together with pre- and post- judgment interest thereon and plaintiff's reasonable attorneys' fees, costs and expenses; award plaintiff exemplary damages of three times the amount of any commissions determined to be owed to plaintiff; and grant such other relief to plaintiff as the Court deems just.

## COUNT III
## FOR VIOLATION OF THE TEXAS LABOR CODE

44. Fortin realleges and incorporates by this reference the allegations of paragraph 1 through 23 as though fully restated herein.

45. During the period March 2003 through March 2005, Fortin was an employee of ACV under the terms of the Texas Labor Code, Tex. Lab. Code §61.001.

46. Pursuant to his agreement with ACV, Fortin was entitled to receive Incentive Compensation of $110 to $150 per lot for all tracts of land he put under contract for the company or 6% of the revenue received by the company for "marketing deals."

47. For the period in which Fortin was working in Texas prior to his transfer to Chicago in March 2005, Fortin satisfied all conditions to be entitled to receive Incentive Compensation for the Tuscany Lakes, Uvalde and Deer Creek-Pasadena projects, and therefore Fortin was entitled to receive Incentive Compensation of $150 per lot, or a total of $294,150 ($150 x 2,094) on Tuscany Lakes and Uvalde, plus $2,100 for the Deer Creek-Pasada project.

48. By its failure to pay Fortin the Incentive Compensation described in paragraphs 14-16 above, ACV wrongfully failed to pay Fortin all wages and final compensation earned by Fortin, in violation of Chapter 61, Subsections 61.014-61.015 of the Texas Labor Code, Tex. Lab. Code §§61.014-61.015.

49. Pursuant to Subsections 38.001-38.002 of the Texas Civil Practice & Remedies Code, Tex. Civ. Prac. & Rem. Code §38.001-38.002, Fortin made a written demand at least 30 days before this action was filed for the amounts due and owing, and therefore ACV shall be liable for Fortin's reasonable attorneys' fees in addition to any amount determined by the Court to be due and owing as costs of the action.

50. On information and belief, in 2005 ACV's money and assets were transferred to CityVista or were distributed to ACV's owners including Cisneros, who used said funds to start up CityVista. On information and belief, ACV then changed its name to American CityVista Holdings Ltd., however it was left with little or no assets.

51. On information and belief, CityVista is the successor in interest to and a continuation of the business of ACV: (a) Cisneros was made aware by KB Home that Fortin was owed compensation on the Tuscany Lakes deal at the time it provided ACV substantial debt relief which provided the "seed money" for CityVista; (b) there was continuity in the business strategy and mission of ACV to CityVista, which was to increase the supply of affordable housing in major U.S. cities; (c) CityVista kept the same offices at 454 Soledad in San Antonio and also in Santa Monica, California; (d) CityVista kept the same employees in San Antonio; (e) CityVista had the same majority owners and managers, Henry Cisneros, Victor Miramontes, Fernando DeLeon; (f) CityVista, in substantial part, continued the business of ACV; (g) Fortin's supervisors remained Fernando De Leon, Henry Cisneros and Victor Miramontes; and (h) ACV's work force remained the same.

52. Therefore, CityVista is liable to Fortin for the wages and final compensation owed to him for the period of time he was working for ACV.

WHEREFORE, plaintiff Michael Fortin respectfully requests that the Court enter judgment in his favor and against Defendants American CityVista Holdings, Ltd. and CityVista Capital, LLC on Count III of the Complaint; award plaintiff compensatory damages in an amount to be proven at trial but believed to be $296,250, together with pre- and post- judgment interests thereon and plaintiff's reasonable attorneys' fees, costs and expenses; and grant such other relief to plaintiff as the Court deems just.

## COUNT IV
## FOR BREACH OF CONTRACT (IN THE ALTERNATIVE TO COUNT III)

53. Fortin realleges and incorporates by this reference the allegations of paragraph 1 through 23 as though fully restated herein.

54. This claim for breach of contract is brought in the alternative to Count III in the event the Court determines that Fortin was truly an independent contractor rather than an employee of ACV under the Texas Labor Code, Tex. Lab. Code §61.001.

55. Pursuant to his agreement with ACV, Fortin was entitled to receive Incentive Compensation of $110 to $150 per lot for all tracts of land he put under contract for the company or 6% of the revenue received by the company for "marketing deals" such as Deer Creek-Pasadena.

56. For the period in which Fortin was working in Texas prior to his transfer to Chicago in March 2005, Fortin satisfied all conditions to be entitled to receive Incentive Compensation for the Tuscany Lakes, Uvalde and Deer Creek-Pasadena projects, and therefore Fortin was entitled to receive Incentive Compensation of $150 per lot, or a total of $294,150 ($150 x 2,094) on Tuscany Lakes and Uvalde, plus $2,100 for the Deer Creek-Pasadena project.

57. ACV has breached its agreement with Fortin by failing to pay him Incentive Compensation on these projects.

58. As the proximate result of ACV's breaches of its agreement, Fortin has suffered monetary damages believed to be $296,250.

59. Fortin has sent a written demand to ACV's successor, CityVista, for payment of the Incentive Compensation owed on the projects described in paragraphs 14-16 above, but they have failed and refused to make any payment whatsoever.

60. On information and belief, in 2005 ACV's money and assets were transferred to CityVista or were distributed to ACV's owners including Cisneros, who used said funds to start up CityVista. On information and belief, ACV then changed its name to American CityVista Holdings Ltd., however it was left with little or no assets.

61. On information and belief, CityVista is the successor in interest to and a continuation of the business of ACV: (a) Cisneros was made aware by KB Home that Fortin was owed compensation on the Tuscany Lakes deal at the time it provided ACV substantial debt relief which provided the "seed money" for CityVista; (b) there was continuity in the business strategy and mission of ACV to CityVista, which was to increase the supply of affordable housing in major U.S. cities; (c) CityVista kept the same offices at 454 Soledad in San Antonio and also in Santa Monica, California; (d) CityVista kept the same employees in San Antonio; (e) CityVista had the same majority owners and managers, Henry Cisneros, Victor Miramontes, Fernando DeLeon; (f) CityVista, in substantial part, continued the business of ACV; (g) Fortin's supervisors remained Fernando De Leon, Henry Cisneros and Victor Miramontes; and (h) ACV's work force remained the same.

62. Therefore, CityVista is liable to Fortin for the wages and final compensation owed to him for the period of time he was working for ACV.

WHEREFORE, in the alternative to Count III, plaintiff Michael Fortin respectfully requests that the Court enter judgment in his favor and against Defendants American CityVista Holdings, Ltd. and CityVista Capital, LLC on Count IV of the Complaint; award plaintiff compensatory damages in an amount to be proven at trial but believed to be $296,250, together with pre- and post- judgment interests thereon and plaintiff's reasonable attorneys' fees, costs and expenses; and grant such other relief to plaintiff as the Court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

                              MICHAEL FORTIN

                              By: /s/ Steven M. Hartmann
                                    One of His Attorneys

Steven M. Hartmann
ARDC No. 6185428
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606-6677
Tel: 312-360-6000
Fax: 312-360-6573
Counsel for Plaintiff
1440737v1

# EXHIBIT A

## AMERICAN CITYVISTYA
## INCENTIVE PLAN

| Houston | Bonus Potential at % of ACV Houston Plan | | | | | Bonus Per Lot | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 50% | 60% | 75% | 100% | 125% | 50% | 60% | 75% | 100% | 125% |
| Michael Fortin | 0 | 5,775 | 16,406 | 32,813 | 52,500 | 0 | 110 | 125 | 125 | 150 |
| Houston Plan: 525 Lots | | | | | | | | | | |

\* From 50-74% of Plan bonus is $110 per lot. At 75% of Plan, bonus increases to $125 and pays $15 per lot for all lots between 50-75%.
This provides additional incentive to reach 75%. Additional incentive is provided after 100%, but there is not retroactive pay.



EXHIBIT A