UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL FORTIN,

       Plaintiff,

      v.

CITYVISTA CAPITAL, LLC, a Delaware limited liability
company; and HENRY CISNEROS, individually; and
AMERICAN CITYVISTA HOLDINGS, LTD.,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No. 07 C 7009

Judge Kendall
Magistrate Judge Keys

**DEFENDANT CITYVISTA CAPITAL, LLC'S
ANSWER TO COMPLAINT**

  CityVista Capital LLC (incorrectly named in the Complaint as CityVista Capital, LLC)

("CityVista"), through undersigned counsel, answers the numbered paragraphs in the Complaint

of Plaintiff Michael Fortin ("Fortin") as follows:

  **1. Plaintiff Michael Fortin ("Fortin") is a citizen of the State of Illinois and
resides in this district.**

  Denies knowledge or information sufficient to form a belief as to the truth of the

allegation in Paragraph 1 of the Complaint, except admits that Fortin's last address on file with

CityVista is 1730 N. Clark St., Apartment 3312, Chicago, IL 60614-5323.

  **2. Defendant CityVista Capital, LLC ("CityVista") is a Delaware limited
liability company which is doing business in and has an office located in this district.**

  Denies the allegation in Paragraph 2 of the Complaint except admits that CityVista is a

Delaware limited liability company and that until May 31, 2007 it maintained an office at 350

West Ontario, 7th Floor, Chicago, IL 60610.

**3.    Defendant American CityVista Holdings, Ltd., formerly known as American CityVista, Ltd. ("ACV"), is a Texas limited partnership which at all relevant times was doing business in and had an office located in this district.**

Upon information and belief, denies the allegation in Paragraph 3 of the Complaint except admits that American CityVista Holdings Ltd. (incorrectly named in the Complaint as American CityVista Holdings, Ltd.) was formerly known as American CityVista, Ltd. (collectively with American CityVista Holdings Ltd., "ACV") and is a Texas limited partnership.

**4.    Defendant Henry Cisneros ("Cisneros") is a citizen of San Antonio, Texas. At all relevant times, Cisneros was a majority owner and officer of ACV and is currently a majority owner and Chairman of CityVista.**

Admits the allegation contained in Paragraph 4 of the Complaint except states that Mr. Cisneros is the Executive Chairman of CityVista.

## JURISDICTION AND VENUE

**5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity) since the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the case is between citizens of different states.**

States that Paragraph 5 of the Complaint is a conclusion of law to which no response is required.

**6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because (a) defendant CityVista resides in this district, and (b) a substantial part of the events or omissions giving rise to the claim occurred in this district.**

States that Paragraph 6 of the Complaint is a conclusion of law to which no response is required.  To the extent a response is required, CityVista denies the allegation contained in Paragraph 6 of the Complaint.

## FACTUAL ALLEGATIONS

**7.      In March 2003, Fortin began his employment with ACV, CityVista's predecessor, as Regional Manager of its Texas Division.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 7 of the Complaint except denies that ACV is CityVista's predecessor.

**8.      Fortin's primary job duties were to "tie-up" tracts of vacant land by putting them under contract for residential development.**

Upon information and belief, admits the allegation in Paragraph 8 of the Complaint to the extent it admits that one of Fortin's job duties was to "tie-up" tracts of vacant land by putting them under contract for residential development.

**9.      Fortin was entitled to receive compensation consisting of a base salary plus Incentive Compensation of $110 to $150 per lot for all tracts of land he put under contract for the company.  The per lot payments ranged from $110 to $150 per lot depending upon the percentage of the bonus plan achieved by Fortin.  The Incentive Plan is attached hereto as <u>Exhibit A</u> and incorporated by this reference.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 9 of the Complaint.

**10.      In December 2003, ACV required Fortin to sign an Independent Contractor Agreement, however his job title and duties and the terms of compensation, including the Incentive Compensation, remained the same.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 10 of the Complaint.

**11.      Paragraph 8 of Fortin's agreement with ACV states as follows:**

> **Incentive: The incentive plan will be similar to the prior American CityVista incentive plan for all tracts of land the consultant puts under contract for American CityVista, paying 50-74% of Plan bonus at $110 per lot.  At 75% of Plan, bonus increases to $125 and pays $150 per lot for all lots between 50-75%.  The Houston Plan is 525 lots.  Additional incentive is provided after 100%, but there is not retroactive pay.  The incentive pay will be paid to the consultant upon closing.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 11 of the Complaint.

**12.    Fortin fully satisfied all conditions precedent to be paid Incentive Compensation under this agreement by obtaining contracts for vacant lots for ACV for the projects described in paragraphs 13-16 below, which sales subsequently closed. Therefore, Fortin is entitled to be paid Incentive Compensation for said transactions.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 12 of the Complaint. CityVista expressly denies that Fortin is entitled to, or otherwise owed, any "Incentive Compensation" from CityVista with respect to the projects described in Paragraphs 13-16 of the Complaint.

**13.    On approximately September 6, 2003, Fortin put under contract 212 lots for ACV on the Sierra Vista project. The lot sales closed on August 22, 2004. Fortin was paid Incentive Compensation for this transaction of $23,320, based on $110 per lot. (Fortin is not making a claim related to this transaction.)**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 13 of the Complaint.

**14.    On September 29, 2003, Fortin put under contract 130 lots for ACV on the Deer Creek-Pasadena project. This was a marketing deal in which ACV agreed to pay Fortin Incentive Compensation of 6% of the revenue received by the company. ACV received revenue of $35,000 on this project, and therefore Fortin is entitled to Incentive Compensation of $2,100, 6% of $35,000. Fortin has not been paid this Incentive Compensation.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 14 of the Complaint. CityVista expressly denies that Fortin is entitled to, or otherwise owed, any "Incentive Compensation" from CityVista with respect to the project described in Paragraph 14 of the Complaint.

**15.     On October 31, 2003, Fortin put under contract 1,882 lots for ACV on the Tuscany Lakes project.  The lot sales closed in June, 2007, and therefore Fortin is owed Incentive Compensation of $282,300, *i.e.*, 1,882 lots x $150/lot.  (Fortin is entitled to $150/lot because 100% of his Bonus Plan was achieved.)  Fortin has not been paid this Incentive Compensation.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 15 of the Complaint.  CityVista expressly denies that Fortin is entitled to, or otherwise owed, any "Incentive Compensation" from CityVista with respect to the project described in Paragraph 15 of the Complaint.

**16.     On July 27, 2004, Fortin put under contract 79 lots for ACV on the Uvalde project.  The lot sales closed on January 31, 2005, and therefore Fortin is owed Incentive Compensation of $11,850; *i.e.*, 79 lots x $150/lot, which remains unpaid.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 16 of the Complaint.  CityVista expressly denies that Fortin is entitled to, or otherwise owed, any "Incentive Compensation" from CityVista with respect to the project described in Paragraph 16 of the Complaint.

**17.     On August 15, 2004, ACV unilaterally changed its Incentive Compensation policy for Fortin as follows:**

> **Regional Managers [Fortin's position] should expect to earn up to 6% of all revenues that he or she generates for the firm. Revenues generated via marketing arrangements are entirely exempt from this type of additional compensation.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 17 of the Complaint.

**18.    In March 2005, Fortin was transferred to Chicago and began selling financing on behalf of the California Public Employees Retirement System (CalPERS), as a representative of CityVista.  CityVista was and is a fiduciary for CalPERS.  Fortin was made an employee of CityVista and began receiving his salary from CityVista.  Fortin was assured by CityVista that his Incentive Compensation; *i.e.*, 6% of all revenue that he generated for the company, would continue as before.**

Denies the allegation in Paragraph 18 of the Complaint except admits that, upon information and belief, in or about early 2005 Fortin moved to Chicago, IL; that in or about June 2005 Fortin became an independent contractor to CityVista working from an office in Chicago, IL; that in or about January, 2007 Fortin became employed by CityVista; that in or about January, 2007 Fortin began receiving his salary from CityVista; and that CityVista was and is a fiduciary for CalPERS.

**19.    On June 9, 2006, Fortin procured a mezzanine financing transaction for CityVista for a project known as Woodland Park, which closed on October 13, 2006.  Fortin is entitled to Incentive Compensation for this transaction of 6% of the revenue received or scheduled to be received by CityVista, which Fortin is informed and believes to be in excess of $1,110,000.  Fortin has received no Incentive Compensation for this transaction.**

Denies the allegation in Paragraph 19 of the Complaint except admits that on or about June 7, 2006, CityVista executed a term sheet for a mezzanine financing transaction for a project known as Woodland Park; that the transaction closed on October 12, 2006; and that Fortin procured the transaction.

**20.    On November 7, 2006, Fortin procured a leveraged equity financing transaction for CityVista for a project known as Auburn Lakes, which closed in July of 2007.  Fortin is entitled to Incentive Compensation of 6% of all revenue received or scheduled to be received by CityVista, which Fortin is informed and believes to be in excess of $3,366,000.  Fortin has received no Incentive Compensation on this transaction.**

Denies the allegation in Paragraph 20 of the Complaint except admits that on or about November 7, 2006, CityVista executed a term sheet for a leveraged equity financing transaction for a project known as Auburn Lakes; that the transaction closed on or about July 13, 2007; and that Fortin procured the transaction.

**21.    Fortin has demanded that CityVista pay Incentive Compensation for the projects identified in paragraphs 14 through 20 above, but CityVista has failed and refused to pay any Incentive Compensation whatsoever for these transactions.**

Admits the allegation in Paragraph 21 of the Complaint to the extent that it admits that on or about October 25, 2007 counsel for Fortin sent a letter to CityVista demanding allegedly owed payments relating to projects referred to as "Tuscan Lakes," "Uvalde," "Deer Creek-Pasadena," "Woodland Park" and "Auburn Lakes" and to the extent that it admits that CityVista declined to pay Fortin or his counsel the amount demanded in the October 25, 2007 letter.    CityVista expressly denies that Fortin has earned or is otherwise entitled to payment from CityVista of any purported "Incentive Compensation" in connection with the aforementioned projects.

**22.    In December 2006, Fortin received a positive performance review and was promoted to vice president and given a 10% salary increase.**

Admits the allegation in Paragraph 22 of the Complaint to the extent that it admits that in or about December, 2006 Fortin was given a performance review; that effective as of about January, 2007 Fortin's base compensation was given a compensation increase of approximately ten percent (10%); and that effective as of about January, 2007 Fortin was promoted to Vice President.    CityVista further avers that Fortin's year-end performance review for 2006 speaks for itself.

**23.    On April 23, 2007, Fortin sent CityVista a writing stating that he had been constructively terminated, he believes in part because of the failure to pay Incentive Compensation owed to him.  On May 3, 2007, CityVista terminated Fortin's employment.**

Admits the allegation in Paragraph 23 of the Complaint to the extent that it admits that on or about April 24, 2007 Fortin sent CityVista an e-mail which contained the words "constructively terminated" and further admits that on or about May 3, 2007, CityVista formally terminated Fortin's employment.  CityVista further avers that Fortin's April 24, 2007 e-mail

speaks for itself as to it's contents.  CityVista denies knowledge or information sufficient to form

a belief as to Fortin's subjective beliefs.

## COUNT I

## <u>FOR VIOLATION OF THE WAGE PAYMENT AND COLLECTION ACT</u>

**24.　　Fortin realleges and incorporates by this reference the allegations of paragraph 1 through 23 as though fully restated herein.**

Restates and incorporates by this reference its responses to the allegations of Paragraph 1

through 23 as though fully restated herein.

**25.　　Fortin was an employee of CityVista under the terms of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, 2 (the "Act").**

Denies the allegation in Paragraph 25 of the Complaint except admits the allegation in

Paragraph 25 of the Complaint with respect to the time period from in or about January, 2007 up

to the termination of Fortin's employment with CityVista.

**26.　　Pursuant to his agreement with CityVista, Fortin was entitled to receive Incentive Compensation for transactions that he generated based on a percentage of revenue received by CityVista.**

Denies the allegation in Paragraph 26 of the Complaint.

**27.　　For the period in which Fortin was working in Illinois, following his transfer to Chicago in March 2005, Fortin satisfied all conditions to be entitled to receive Incentive Compensation for the Auburn Lakes and Woodland Park financing transactions, and therefore Fortin was entitled to receive Incentive Compensation of 6% of the revenue received or scheduled to be received by CityVista.**

Denies the allegation in Paragraph 27 of the Complaint in that it denies that Fortin was

entitled to receive "Incentive Compensation" with respect to the Auburn Lakes and Woodland

Park transactions.

28.     Fortin is informed and believes that CityVista has or is scheduled to receive revenue (including management fees of various types) totaling over $4,476,000 on the Auburn Lakes and Woodland Park transactions, and therefore Fortin is entitled to receive Incentive Compensation of $268,560, 6% of the revenue.

Denies the allegation in Paragraph 28 of the Complaint except denies knowledge or information sufficient to form a belief as to Fortin's subjective beliefs.

29.     By its failure to pay Fortin the Incentive Compensation described in paragraphs 19-20 and 27-28 above, CityVista wrongfully failed to pay Fortin all wages and final compensation earned by Fortin, in violation of Sections 4 and 5 of the Act, 820 ILCS 115/4-5.

Denies the allegation in Paragraph 29 of the Complaint.

30.     Cisneros, as CityVista's Chairman, controlled its finances and knowingly permitted CityVista to violate the Act.  Therefore, Cisneros shall be deemed the employer and is personally liable for the compensation owed to Fortin pursuant to Section 13 of the Act.

Denies the allegation in Paragraph 30 of the Complaint except admits that Henry Cisneros is CityVista's Executive Chairman and has the ability to exercise control over CityVista's finances.

31.     Pursuant to Section 1 of the Illinois Attorneys Fees in Wage Actions Act, 705 ILCS 225/1, Fortin made a written demand at least three days before this action was filed for the amounts that are due and owing, and therefore CityVista and Cisneros are liable for Fortin's reasonable attorneys' fees in addition to any amount determined by the Court to be due and owing as costs of the action.  705 ILCS 225/1.

Denies the allegation in Paragraph 31 of the Complaint except admits that on or about October 25, 2007 counsel for Fortin sent a letter to CityVista demanding allegedly owed payments relating to projects referred to as "Tuscan Lakes," "Uvalde," "Deer Creek-Pasadena," "Woodland Park" and "Auburn Lakes."

32.     Pursuant to the Illinois Interest Act, 815 ILCS 205/2, Fortin is entitled to prejudgment interest at the rate of 5% per annum on the amount due.

Denies the allegation in Paragraph 32 of the Complaint.

## COUNT II

### FOR BREACH OF CONTRACT (IN THE ALTERNATIVE TO COUNT I)

**33.     Fortin realleges and incorporates by this reference the allegations of paragraph 1 through 23 as though fully restated herein.**

Restates and incorporates by this reference its responses to the allegations of Paragraph 1

through 23 as though fully restated herein.

**34.     This claim for breach of contract is brought in the alternative to Count I in the event the Court determines that Fortin was truly an independent contractor rather than an employee of CityVista under the Illinois Wage Payment and Collection Act.**

Paragraph 34 is an explanation of legal theory to which no response is required.

**35.     Pursuant to his agreement with CityVista, Fortin was entitled to receive Incentive Compensation for transactions that he generated based on a percentage of revenue received by CityVista.**

Denies the allegation in Paragraph 35 of the Complaint.

**36.     For the period in which Fortin was working in Illinois, following his transfer to Chicago in March 2005, Fortin satisfied all conditions to be entitled to receive Incentive Compensation for the Auburn Lakes and Woodland Park financing transactions, and therefore Fortin was entitled to receive Incentive Compensation of 6% of the revenue received or scheduled to be received by CityVista.**

Denies the allegation in Paragraph 36 of the Complaint in that it denies that Fortin was

entitled to receive "Incentive Compensation" with respect to the Auburn Lakes and Woodland

Park transactions.

**37.     Fortin is informed and believes that CityVista has or is scheduled to receive revenue (including management fees of various types) totaling over $4,476,000 on the Auburn Lakes and Woodland Park transactions, and therefore Fortin is entitled to receive Incentive Compensation of $268,560, 6% of the revenue.**

Denies the allegation in Paragraph 37 of the Complaint except denies knowledge or

information sufficient to form a belief as to Fortin's subjective beliefs.

**38.    CityVista has breached its agreement with Fortin by failing to pay him Incentive Compensation on these projects.**

Denies the allegation in Paragraph 38 of the Complaint.

**39.    As the proximate result of CityVista's breaches of its agreement, Fortin has suffered monetary damages believed to be $268,560.**

Denies the allegation in Paragraph 39 of the Complaint.

**40.    Fortin has sent a written demand to CityVista for payment of the Incentive Compensation owed on the Woodland Park and Auburn Lakes projects, but CityVista has failed and refused to make any payment whatsoever.**

Admits the allegation in Paragraph 40 of the Complaint to the extent that it admits that on or about October 25, 2007 counsel for Fortin sent a letter to CityVista demanding allegedly owed payments relating to, *inter alia*, projects referred to as "Woodland Park" and "Auburn Lakes" and to the extent that it admits that CityVista declined to pay Fortin or his counsel the amount demanded in the October 25, 2007 letter.  CityVista expressly denies that Fortin has earned or is otherwise entitled to payment from CityVista of any purported "Incentive Compensation" in connection with the aforementioned projects.

**41.    Fortin was a sales representative of CityVista (as his principal) under the terms of the Illinois Sales Representative Act, 820 ILCS 120/1, *et seq*.**

Denies the allegation in Paragraph 41 of the Complaint.

**42.    CityVista's failure to pay Incentive Compensation owed to Fortin (which constitutes commissions under the Sales Representative Act) within 13 days of his termination is a violation of Section 2 of the Sales Representative Act.  Therefore, pursuant to Section 3 of the Act, CityVista is liable to Fortin for exemplary damages in an amount not to exceed three times the amount of the commissions owed plus his reasonable attorneys' fees and costs.**

Denies the allegation in Paragraph 42 of the Complaint.

**43.    Pursuant to the Illinois Interest Act, 815 ILCS 205/2, Fortin is entitled to prejudgment interest at the rate of 5% per annum on the amount due.**

Denies the allegation in Paragraph 43 of the Complaint.

## COUNT III

## FOR VIOLATION OF THE TEXAS LABOR CODE

**44.    Fortin realleges and incorporates by this reference the allegations of paragraph 1 through 23 as though fully restated herein.**

Restates and incorporates by this reference its responses to the allegations of Paragraph 1 through 23 as though fully restated herein.

**45.    During the period March 2003 through March 2005, Fortin was an employee of ACV under the terms of the Texas Labor Code, Tex. Lab. Code § 61.001.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 45 of the Complaint.

**46.    Pursuant to his agreement with ACV, Fortin was entitled to receive Incentive Compensation of $110 to $150 per lot for all tracts of land he put under contract for the company or 6% of the revenue received by the company for "marketing deals."**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 46 of the Complaint.

**47.    For the period in which Fortin was working in Texas prior to his transfer to Chicago in March 2005, Fortin satisfied all conditions to be entitled to receive Incentive Compensation for the Tuscany Lakes, Uvalde and Deer Creek-Pasadena projects, and therefore Fortin was entitled to receive Incentive Compensation of $150 per lot, or a total of $294,150 ($150 x 2,094) on Tuscany Lakes and Uvalde, plus $2,100 for the Deer Creek-Pasadena project.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 47 of the Complaint.  CityVista expressly denies that Fortin is entitled to, or otherwise owed, any "Incentive Compensation" from CityVista with respect to the projects described in Paragraph 47 of the Complaint.

48.   By its failure to pay Fortin the Incentive Compensation described in paragraphs 14-16 above, ACV wrongfully failed to pay Fortin all wages and final compensation earned by Fortin, in violation of Chapter 61, Subsections 61.014-61.015 of the Texas Labor Code, Tex. Lab. Code §§ 61.014-61.015.

Denies knowledge or information sufficient to form a belief as to the truth of the

allegation in Paragraph 48 of the Complaint.

49.   Pursuant to Subsections 38.001-38.002 of the Texas Civil Practice & Remedies Code, Tex. Civ. Prac. & Rem. Code § 38.001-38.002, Fortin made a written demand at least 30 days before this action was filed for the amounts due and owing, and therefore ACV shall be liable for Fortin's reasonable attorneys' fees in addition to any amount determined by the Court to be due and owing as costs of the action.

Denies knowledge or information sufficient to form a belief as to the truth of the

allegation in Paragraph 49 of the Complaint.

50.   On information and belief, in 2005 ACV's money and assets were transferred to CityVista or were distributed to ACV's owners including Cisneros, who used said funds to start up CityVista.  On information and belief, ACV then changed its name to American CityVista Holdings Ltd., however it was left with little or no assets.

Denies the allegation in Paragraph 50 of the Complaint except admits that on or about

June 14, 2005 American CityVista, Ltd. changed its name to American CityVista Holdings Ltd.

51.   On information and belief, CityVista is the successor in interest to and a continuation of the business of ACV: (a) Cisneros was made aware by KB Home that Fortin was owed compensation on the Tuscany Lakes deal at the time it provided ACV substantial debt relief which provided the "seed money" for CityVista; (b) there was continuity in the business strategy and mission of ACV to CityVista, which was to increase the supply of affordable housing in major U.S. cities; (c) CityVista kept the same offices at 454 Soledad in San Antonio and also in Santa Monica, California; (d) CityVista kept the same employees in San Antonio; (e) CityVista had the same majority owners and managers, Henry Cisneros, Victor Miramontes, Fernando DeLeon; (f) CityVista, in substantial part, continued the business of ACV; (g) Fortin's supervisors remained Fernando DeLeon, Henry Cisneros and Victor Miramontes; and (h) ACV's work force remained the same.

Denies the allegation in Paragraph 51 of the Complaint except: with respect to subpart (c)

admits that CityVista maintains an office at 454 Soledad in San Antonio and that, until on or

about October 19, 2007, CityVista maintained an office in Santa Monica, California; with respect

13

to subparts (d) and (h) admits that certain employees of ACV domiciled in ACV's San Antonio office were offered employment with CityVista; with respect to subpart (e) admits that Henry Cisneros is an owner of ACV and holds an equity interest in CityVista Capital, and further admits that Henry Cisneros, Victor Miramontes and Fernando DeLeon were "managers" of both ACV and CityVista; and with respect to subpart (g) admits that Fernando DeLeon was Fortin's supervisors at both ACV and CityVista.

**52.    Therefore, CityVista is liable to Fortin for the wages and final compensation owed to him for the period of time he was working for ACV.**

Denies the allegation in Paragraph 52 of the Complaint.

## COUNT IV

### FOR BREACH OF CONTRACT (IN THE ALTERNATIVE TO COUNT III)

**53.    Fortin realleges and incorporates by this reference the allegations of paragraph 1 through 23 as though fully restated herein.**

Restates and incorporates by this reference its responses to the allegations of Paragraph 1 through 23 as though fully restated herein.

**54.    This claim for breach of contract is brought in the alternative to Count III in the event the Court determines that Fortin was truly an independent contractor rather than an employee of ACV under the Texas Labor Code, Tex. Lab. Code § 61.001.**

Paragraph 54 is an explanation of legal theory to which no response is required.

**55.    Pursuant to his agreement with ACV, Fortin was entitled to receive Incentive Compensation of $110 to $150 per lot for all tracts of land he put under contract for the company or 6% of the revenue received by the company for "marketing deals" such as Deer Creek-Pasadena.**

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 55.

56.    For the period in which Fortin was working in Texas prior to his transfer to Chicago in March 2005, Fortin satisfied all conditions to be entitled to receive Incentive Compensation for the Tuscany Lakes, Uvalde and Deer Creek-Pasadena projects, and therefore Fortin was entitled to receive Incentive Compensation of $150 per lot, or a total of $294,150 ($150 x 2,094) on Tuscany Lakes and Uvalde, plus $2,100 for the Deer Creek-Pasadena project.

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 56.  CityVista expressly denies that Fortin is entitled to, or otherwise owed, any "Incentive Compensation" from CityVista with respect to the projects described in Paragraph 56 of the Complaint.

57.    ACV has breached its agreement with Fortin by failing to pay him Incentive Compensation on these projects.

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 57.

58.    As the proximate result of ACV's breaches of its agreement, Fortin has suffered monetary damages believed to be $296,250.

Denies knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 58

59.    Fortin has sent a written demand to ACV's successor, CityVista, for payment of the Incentive Compensation owed on the projects described in paragraphs 14-16 above, but they have failed and refused to make any payment whatsoever.

Denies the allegations in Paragraph 59 of the Complaint except admits that on or about October 25, 2007 counsel for Fortin sent a letter to CityVista demanding allegedly owed payments relating to, inter alia, projects referred to as "Tuscan Lakes," "Uvalde," and "Deer Creek-Pasadena," and to the extent that it admits that CityVista declined to pay Fortin or his counsel the amount demanded in the October 25, 2007 letter.  CityVista expressly denies that Fortin has earned or is otherwise entitled to payment from CityVista of any purported "Incentive

Compensation" in connection with the aforementioned projects. CityVista also expressly denies that it is a "successor" of ACV.

**60.    On information and belief, in 2005 ACV's money and assets were transferred to CityVista or were distributed to ACV's owners including Cisneros, who used said funds to start up CityVista. On information and belief, ACV then changed its name to American CityVista Holdings Ltd., however it was left with little or no assets.**

Denies the allegation in Paragraph 60 of the Complaint except admits that on or about June 14, 2005 American CityVista, Ltd. changed its name to American CityVista Holdings Ltd.

**61.    On information and belief, CityVista is the successor in interest to and a continuation of the business of ACV: (a) Cisneros was made aware by KB Home that Fortin was owed compensation on the Tuscany Lakes deal at the time it provided ACV substantial debt relief which provided the "seed money" for CityVista; (b) there was continuity in the business strategy and mission of ACV to CityVista, which was to increase the supply of affordable housing in major U.S. cities; (c) CityVista kept the same offices at 454 Soledad in San Antonio and also in Santa Monica, California, (d) CityVista kept the same employees in San Antonio; (e) CityVista had the same majority owners and managers, Henry Cisneros, Victor Miramontes, Fernando DeLeon; (f) CityVista, in substantial part, continued the business of ACV; (g) Fortin's supervisors remained Fernando DeLeon, Henry Cisneros and Victor Miramontes; and (h) ACV's work force remained the same.**

Denies the allegation in Paragraph 61 of the Complaint except: with respect to subpart (c) admits that CityVista maintains an office at 454 Soledad in San Antonio and that, until on or about October 19, 2007, CityVista maintained an office in Santa Monica, California; with respect to subparts (d) and (h) admits that certain employees of ACV domiciled in ACV's San Antonio office were offered employment with CityVista; with respect to subpart (e) admits that Henry Cisneros is an owner of ACV and holds an equity interest in CityVista Capital, and further admits that Henry Cisneros, Victor Miramontes and Fernando DeLeon were "managers" of both ACV and CityVista; and with respect to subpart (g) admits that Fernando DeLeon was Fortin's supervisors at both ACV and CityVista.

16

**62.    Therefore, CityVista is liable to Fortin for the wages and final compensation owed to him for the period of time he was working for ACV.**

Denies the allegation in Paragraph 62 of the Complaint.

## AFFIRMATIVE DEFENSES

**FOR FURTHER AND SEPARATE AFFIRMATIVE DEFENSES** to the

claims asserted in the Complaint, CityVista alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief may be

granted.

## SECOND AFFIRMATIVE DEFENSE

Fortin's claims are barred by the doctrines of waiver, estoppel, laches and unclean

hands.

## THIRD AFFIRMATIVE DEFENSE

If Fortin has suffered damages, which CityVista expressly denies, Fortin has

failed to make reasonable and diligent efforts to mitigate its damages.

## FOURTH AFFIRMATIVE DEFENSE

Fortin has suffered no damages and/or no damages for which CityVista can be

held liable.

## FIFTH AFFIRMATIVE DEFENSE

Fortin's claims against CityVista are barred by the statute of frauds.

## SIXTH AFFIRMATIVE DEFENSE

Fortin's claims against CityVista are barred by one or more defenses founded upon

documentary evidence.

## SEVENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because to the extent Fortin was an employee of CityVista, Fortin was an employee at-will and the terms and conditions of his employment were subject to change at any time and for any lawful reason.

## EIGHTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because, to the extent Fortin was an independent contractor of CityVista, the independent contractor relationship was terminable at any time with our without cause, and the terms and conditions of his engagement were subject to change at any time and for any lawful reason.

## NINTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because, he was not an employee during all or portions of the time period with respect to which he seeks compensation.

## TENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because, he was not a sales representative as defined by the Illinois Sales Representative Act.

## ELEVENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because, he was not an employee of CityVista during all or portions of the time period with respect to which he seeks compensation.

## TWELFTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because, he was not an independent contractor of CityVista during all or portions of the time period with respect to which he seeks compensation.

## THIRTEENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because, he was not a sales representative of CityVista during all or portions of the time period with respect to which he seeks compensation.

## FOURTEENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because, he had no contract or agreement with CityVista, during all or portions of the time period with respect to which he seeks compensation, that entitle him to the amounts he seeks in this action.

## FIFTEENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because, CityVista was not and is not a principal as defined by the Illinois Sales Representative Act.

## SIXTEENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because Fortin has failed to exhaust his administrative remedies.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, by the applicable statute of limitations and/or limitations of time to invoke administrative remedies.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Fortin's claims are barred, in whole or in part, because he has been paid all amounts due to him from CityVista.

## <u>NINETEENTH AFFIRMATIVE DEFENSE</u>

Fortin's claims are barred, in whole or in part, because to the extent CityVista is found liable for failing to make payments owed to Fortin, Fortin's demand for payment from CityVista prior to commencing this action exceeded the amounts (if any) owed by CityVista.

**WHEREFORE**, CityVista demands judgment dismissing the Complaint in all respects, for the costs and disbursements of this action, including reasonable attorneys' fees, and for such other and further relief as to this Court may seem just and proper.

Dated: February 6, 2008

Respectfully submitted,
CITYVISTA CAPITAL LLC


_____/s/ Stacey L. Smiricky_____
One of the Attorneys for Defendant

Stephen J. Landes
Stacey L. Smiricky
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Chicago, IL 60606
(312) 201-2000
(312) 201-2555 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2008, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Steven M. Hartmann
Freeborn & Peters LLP
311 S. Wacker Drive
Suite 3000
Chicago, IL  60606


_____ /s/ Stacey L. Smiricky_____